**CITIZENS NATIONAL TRUST AND SAVINGS BANK OF LOS ANGELES, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 16285.**

United States Court of Appeals Ninth Circuit.

Aug. 24, 1959.

Henry Merton, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Asst. U. S. Atty., John T. Allen, Atty., Dept. of Justice, Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and LING, District Judge.

BARNES, Circuit Judge.

This is an action brought in the court below by the United States against appellant bank for money paid under mistake and for breach of contract, pursuant to 28 U.S.C. § 1345. The appellee sought to recover money paid to the bank as an insurer of a promissory note executed and delivered under the provisions of the National Housing Act, Title I. Appellee alleged that the money had been so paid in error and that appellee was damaged in the amount of money so paid because appellant had failed to comply with the terms of the insurance contract and the regulations of the Administrator pertaining thereto.

This case was submitted to the trial court on a written stipulation of facts, and no evidence other than this stipulation was proffered by the parties or received by the court. Such stipulation referred to and incorporated the judgment and findings of the district court in the related case of United States v. Bashore.[1] The court concluded that the United States was entitled to judgment on the ground that appellant had breached the insurance contract.[2] A motion for a new trial was denied, and timely notice of appeal filed. This Court has jurisdiction. 28 U.S.C. § 1291.

Essential to an understanding of the issues is a knowledge of the facts leading up to this litigation and the contents of the findings made in the related case. We summarize them briefly:

Appellee United States, as an insurer under the terms of Title I of the National Housing Act, paid the appellant bank $793.84, representing the unpaid balance of a defaulted instalment promissory note executed by George Bashore and delivered to Durastone Co., as principal, under the terms of the Act, following demand for such payment by the appellant bank to which the note had been previously negotiated by the payee Durastone Co. The bank certified to appellee that the terms of the insurance contract and the regulations had been complied with, and had assigned the note to the appellee United States without warranty, *except that the note qualified for insurance.*

---

1. United States v. Bashore, No. 19527–WM in the District Court of the Southern District of California, Central Division.

2. Cf.R. 34, Conclusion V.

Following the transfer of this note to the United States, it filed an action in the United States District Court for the Southern District of California, No. 19527–WM–Civil, against the maker of the note for the unpaid balance thereon. In that case, (judgment and findings of which were attached to the stipulation as Exhibit A) the trial court found that the note was *not* valid and enforceable against the defendant-maker, Bashore, because the payee of the note, (Durastone Co.) had misrepresented certain "basic facts" concerning the work to be done, and because the defendant, Bashore, through no negligence of his own, had failed to realize that the note was negotiable paper. The court also found that since, (under the circumstances present in the transaction) the bank had made the Durastone Co. its agent to obtain the note, the bank had constructive knowledge of the fraud and thus could not be a holder in due course.[3] The court further found that the government was not a holder in due course and had not taken the note from a holder in due course, since it took from the bank, after maturity, and with notice of the defects.[4] Accordingly, the court in the companion case rendered judgment in favor of Bashore and against the United States, concluding that the note was not valid and enforceable as against him. We note that the bank was not a party to the suit against the maker, although it had knowledge of the action before trial, and apparently a legal representative of the bank "audited" that trial.

The trial court in the instant case concluded that since the appellant bank was required under its insurance contract with the Federal Housing Commissioner to comply with the regulations of the Administrator enacted pursuant to Title I of the National Housing Act (12 U.S.C.A. § 1703), (which regulations require that a note, to qualify for insurance, must be "valid and enforceable") the bank had not complied with the terms of the insurance contract if the note was not, in fact, valid and enforceable. It further found that the bank had warranted that the note was valid and enforceable when it assigned it to the United States,[5] whereas the same United States district court had previously held that the note was *not* valid and enforceable against the maker in an action brought by the government as assignee of the note[6] and that the United States was entitled to judgment against the bank for breach of the warranty. The trial court refused to go behind the judgment of a brother judge to re-examine the validity of the note or its enforceability. Thus, judgment was rendered in favor of the United States for the sum of $793.84 together with interest at the rate of 6 per cent from June 23, 1955, plus costs. The trial judge in the case before us rendered a brief written opinion, outlining in some detail why it would not go behind the judgment, and why the note had to be valid and enforceable (but not necessarily collectible) in order that the defendant-appellant bank might here prevail.

It is on this foundation of facts that we approach the issues in the instant case. Appellant specifies four errors, which we believe may be summarized as follows:

(1) Was the trial court correct in finding that the note in question was not valid and enforceable on the basis of the findings and judgment in United States v. Bashore, No. 19527–WM, and therefore not an insurable note under the regulations, resulting in a breach of warranty given the United States, or should it have refused to consider this prior related case as evidence under the stipulation?

(2) Was the trial judge correct in refusing to go behind the findings and judgment in the Bashore case?

(3) Did the trial court hold that in all cases a promissory note, purportedly covered by the National Housing Act,

---

3. Cf.R. 20, Finding X.

4. Cf.R. 20, Finding XI.

5. Cf.R. 31, Finding IV.

6. Cf.R. 31, Finding V.

and later found to be invalid and unenforceable against the maker, is ineligible for insurance coverage under the Act and the regulations? If so, is this correct?

(4) Is the government not in reality an insurer of the notes to the banks who act reasonably and in good faith, regardless of the ultimate enforceability or lack of enforceability of the note?

As the trial court indicated in its memorandum opinion the only issue here below was the insurability of the note in question. If it was not insurable the bank was liable on its express warranty that it was insurable. We believe that the answer to this issue depends on whether or not the note was valid and enforceable. "Valid and enforceable," says the government, means just that. "Valid and enforceable," says the bank, means "valid and enforceable on its face." We first consider whether it was proper for the trial court to rely on the findings and judgment of a brother judge (in the action by the United States against the maker of the note) as evidence, and at the same time whether the trial judge should have gone back of these findings and required further evidence on this question beyond that contained in the stipulation.

The appellant argues, very briefly, that the doctrine of *res judicata* cannot apply here since appellant is a stranger to the judgment in the Bashore case, and the mere fact that it could have made itself a party to the action does not change the situation in any manner. It is argued that the question here is the insurability of the note and that this was not in issue in the Bashore case. We agree. However, this does not mean that the trial court was in error in applying the facts as determined in Bashore to this case.

The government admits that the strict *res judicata* doctrine has no place in this case, but contends that under the doctrine of collateral estoppel,[7] the facts as found in Bashore are binding on appellant so far as applicable since appellant bank was in privity with the government who was a party to that prior action. See Southern Pac. R. Co. v. United States, 1897, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355. It is the government view, with which we agree, that the basic question here is whether the note was valid and enforceable, which was precisely the same question litigated and determined in the Bashore case. The bank knew this case was being tried, and it is undenied that counsel for the bank was actually present at the trial, although not participating.[8]

It is well established that where a question of fact, or a mixed question of fact and law, essential to a judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties and their privies in a subsequent but different cause of action involving the same facts. E. V. Prentice Mach. Co. v. Associated Plywood Mills, 9 Cir. 1958, 252 F.2d 473, 476; Williams v. Cambridge Mutual Fire Ins. Co., 5 Cir. 1956, 230 F.2d 293, 294; Caterpillar Tractor Co. v. International Harvester Co., supra; In re Williams Estate, 1950, 36 Cal.2d 289, 223 P.2d 248, 251, 22 A.L.R.2d 716. Restatement, Judgments § 68 (1942). And see, Yates v. United States, 1957, 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356; Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898; Lynch v. Com'r, 7 Cir., 1954, 216 F.2d 574, 579; Hornstein v. Kramer Bros. Freight Lines, 3 Cir., 1943, 133 F.2d 143, 145. See also, 50 C.J.S., Judgments §§ 593, 656. Since this is the law,

---

**7.** Sometimes referred to as estoppel by judgment, and a form of *res judicata* according to some writers. See Caterpillar Tractor Co. v. International Harvester Co., 3 Cir. 1941, 120 F.2d 82, note 4 at page 84, 139 A.L.R. 1.

**8.** Representations to this effect were made in the government's brief, and by the government during oral argument, without denial or protest by appellant.

it is apparent that the determination of fact made by the trial judge in Bashore is binding on the parties to this suit, because, as we have said, the same facts are present in both suits and the government and the bank are in privity. It is clear that there was an insurer-insured relationship between them under the provisions of the National Housing Act, as well as an assignor-assignee relationship stemming from the assignment of the note to the United States by the bank, which carried the express warranty that the note was insurable. Because of this, and because the determination that the note was not valid and enforceable was necessary to the Bashore judgment, we hold that under the doctrine of collateral estoppel the findings in Bashore are binding on appellant in the instant case.

Furthermore, there is much weight to be given the comments and cases cited in the memorandum opinion of the trial judge in this case dealing with the natural reluctance and the impropriety of one trial judge to make findings directly opposed to those of a brother judge on the same court, or for that matter for him even to re-examine the facts with an eye to ruling differently. See United States v. United States Smelting, Refining & Min. Co., 1950, 339 U.S. 186, at page 198, 70 S.Ct. 537, at page 544, 94 L.Ed. 750; Rojas-Gutierrez v. Hoy, D.C. S.D.Cal.1958, 161 F.Supp. 448 and cases cited therein. Any other rule would result in intolerable inequities. We think it a good rule in cases such as this, and we have long followed its precepts.[9] We do so again.

Having determined under the first two points raised by appellant that the controlling determination of the facts establishes that the note was not valid and enforceable, we next consider appellant's contentions that the law is that although the note may later turn out to be invalid and unenforceable, the bank is protected if the note is valid on its face and the

bank acts in good faith and without actual knowledge of the defects in the note. Appellant argues in effect that the government is an insurer of the notes without regard to their validity so long as certain prerequisites have been complied with and no matter what the regulations may say. In the course of this argument, appellant rewrites one of the regulations into what it considers it should say, as opposed to what it actually says, in order to establish the validity of its argument.

The applicable statute reads:

"(a) The Commissioner is authorized and empowered upon such terms and conditions as he may prescribe, to insure banks * * * and other such financial institutions, which the Commissioner finds to be qualified by experience or facilities and approves as eligible for credit insurance, against losses which they may sustain as a result of loans and advances of credit * * * made by them on and after July 1, 1939 and prior to July 1, 1955, for the purpose of financing alterations, repairs, and improvements upon or in connection with existing structures * * * by the owners thereof * * * * * * * * * *

"(g) The Commissioner is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this subchapter." 12 U.S.C.A. § 1703.

The regulations existing under said statute provide:

"The note shall bear the genuine signature of the borrower as maker, shall be valid and enforceable against the borrower or borrowers as defined in Section 201.2(i), and shall be complete and regular on its face. * * *" 24 C.F.R. § 201.3, "Eligible Notes—(a) Validity."

It is argued that in spite of the clear language of the above regulation, pro-

---

9. Cole Silver Mining Co. v. Virginia & Gold Hill Mining Co., C.C.D.Nev.1871, 6 Fed.Cas. pp. 72, 74, No. 2,990.

mulgated in accordance with the statute, that "harmonizing all the Regulations" it will be found that "the intent of the whole system and regulatory measures is to protect the lending institution and afford it the insurance when such lending institution acts in good faith in reliance upon the Act and otherwise complies with the regulatory measures prescribed therein." Assuming this, the bank claims that the regulation should be interpreted so as to read that if the note sought to be insured was complete and regular on its face and the bank acted in good faith, that the bank should be protected. In support of this the bank quotes part of 24 C.F.R. § 201.6(b), which says:

> "If, after the loan is made, an insured who acted in good faith discovers any material misstatement or misuse of the proceeds of the loan by the borrower, the dealer, or others, the eligibility of the note for the insurance shall not be affected."

█ We think it quite apparent that the last quoted regulation was not meant to contradict or wipe out the clear language of the earlier regulation requiring that the note be valid and enforceable to be insurable under the program. To do so would put a burden on the government of insuring not only that the borrower would pay the note, but that the dealers and contractors with whom the bank (and not the government) was dealing were honest businessmen who would never misrepresent anything to the borrower so that there could be a valid defense to the note. Such a burden is beyond reason, for the regulations make it clear that the banks have the burden of satisfying themselves that the activities of the dealers and contractors who are the payees of the notes are reliable, financially responsible, and qualified to do the work, and that ascertaining these facts is not the duty of the government agency. (See, e. g. regulations cited on Appellant's Br. 10–11 and p. 7 of Reply Brief.) Furthermore, it is patent that the primary purpose of the Act was not to protect financial institutions, but to promote the construction and rehabilitation of private housing and that as part of this program the Congress, to encourage loans, enacted the insurance portions of this law.

One other difficulty with the argument urged by the bank is that it assumes that in this case it could show that it acted in good faith, and was therefore a holder in due course of this note. This is simply not so for the findings in the Bashore case, in order to reach the final determination, expressly hold that the bank was not a holder in due course of the note. This, as we have noted above, was because it participated in the transaction so closely as to make the payee its agent. [See note 2.] Under the collateral estoppel doctrine that determination of fact is binding on appellant in this case. The bank cannot argue good faith on its part. It is true that it did not have actual knowledge, but had constructive knowledge of the defects.

█ We conclude, therefore, that the trial court did not hold that in all cases where a note is found to be invalid and unenforceable against the maker that this means the note is ineligible for insurance, since it did not reach that question. It is likewise clear that the government is not an insurer of all notes valid and enforceable on their face when purchased by the bank in good faith, as urged by the bank here. All that the trial court held was that in this instance the note was not valid nor enforceable against the maker, and that the appellant bank could not be a holder in due course since it had constructive notice of the misrepresentations by the payee, and therefore the note was not insurable. If the note was not insurable, then the United States was entitled to recover on the warranty accompanying the assignment of the note to it by the bank.

We have not discussed several points made by the government in its brief primarily because we do not think them necessary to the decision.

The judgment of the trial court is affirmed.