**UNITED STATES of America,**
**Plaintiff,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY OF LEXINGTON, Security Trust Company, and First Security National Bank and Trust Company of Lexington, Defendants.**

**No. 1424.**

United States District Court
E. D. Kentucky,
Lexington Division.

Feb. 1, 1967.

George I. Cline, U. S. Atty., Lexington, Ky., Lawrence F. Noble, Atty., Dept. of Justice, Washington, D. C., for plaintiff.

Arnold, Fortas & Porter, Washington, D. C., Stoll, Keenon & Park, Harbison, Kessinger, Lisle & Bush, Lexington, Ky., for defendants.

## OPINION

SWINFORD, Chief Judge.

A detailed recitation of the history of this case is unnecessary and impertinent to an understanding of the decision on the matter now to be determined. In the

interest of clarity of the conclusions reached, I must, however, preface this opinion with a brief summary of the steps which have brought the litigation to this stage.

The complaint in this action was filed on March 1, 1961 and alleged that the merger of the defendants, First National Bank and Trust Company of Lexington and the Security Trust Company, was a violation of Sections 1 and 2 of the Sherman Antitrust Act, 26 Stat. 209, as amended, 15 U.S.C. §§ 1, 2. After a somewhat extended trial on the merits, this court on July 27, 1962 held that the merger was not in violation of either Section 1 or 2 of the Sherman Act and dismissed the complaint. The case was heard and the decision made by Honorable Hiram Church Ford, at that time Chief Judge of the Eastern District of Kentucky and presently serving as a Senior Judge in this district. See opinion, 208 F.Supp. 457.

On April 6, 1964 the Supreme Court reversed the judgment and held that the merger was in violation of Section 1 of the Sherman Act but did not determine the question posed by Section 2 of that Act. See opinion, 376 U.S. 665, 84 S.Ct. 1033, 12 L.Ed.2d 1.

On March 18, 1965 this court entered an order requiring divestiture of the properties belonging to the consolidated banking institution and ordered and directed the creation of a separate, competitive and independent commercial bank to be the equivalent of the former Security Trust Company. Before the divestiture and related orders of the court were effected, the Congress of the United States enacted Public Law 89–356, 80 Stat. 7. This Act became law on February 21, 1966 and provides in pertinent part as follows:

"Sec. 2(a) Any merger, consolidation, acquisition of assets, or assumption of liabilities involving an insured bank which was consummated prior to June 17, 1963, the bank resulting from which has not been dissolved or divided and has not effected a sale or distribution of assets and has not taken any other

similar action pursuant to a final judgment under the antitrust laws prior to the enactment of this Act, shall be conclusively presumed to have not been in violation of any antitrust laws other than section 2 of the Act of July 2, 1890 (section 2 of the Sherman Antitrust Act, 15 U.S.C. 2)."

The record is before the court on the following motion:

"The United States of America, plaintiff herein, hereby moves the Court, on the record herein and on the grounds set forth in the attached affidavit of Lawrence F. Noble, for an adjudication that the merger of the defendants First National Bank and Trust Company of Lexington and Security Trust Company is in violation of section 2 of the Sherman Act (15 U.S.C. 2) and for the entry of a final judgment of divestiture pursuant to that adjudication."

The motion is overruled for the following reasons.

Since the Supreme Court did not reverse the decision of this court on Section 2 of the Sherman Act, that ruling is the law of the case. The case was thoroughly and carefully tried and the issues determined by Judge Ford and so far as I am concerned that concludes the matter. For a judge of coordinate jurisdiction to reverse a judgment of a fellow judge who tried the case, saw and heard the witnesses testify and recorded his findings and conclusions, both of law and fact, in a lucid opinion, is to do disservice to the law and create disrespect for it. There must be an end to litigation and I can well understand why lay people would be thoroughly confused if a question of law at nine o'clock was decided by one judge and at ten o'clock the same question in the same case was decided to the contrary by another judge from the same bench. While there may be instances in which such a reversal would be justified, this is not one of them. Such a legal prerogative is questionable under any circumstance and I personally hold to the view that the law would be best served if reviews of de-

cisions of trial judges were limited to appellate tribunals.

■ Notwithstanding my personal view of the matter, I recognize that a judge of coordinate jurisdiction does have the power to reexamine a prior decision of a fellow judge where there is a patent error. I find no such error in this record. A succinct statement of the law on this subject is found in the following quotation from the opinion in the case of In Re Carmona, D.C., 224 F.Supp. 497.

"It is also expressed in the many cases which hold that 'judges of co-ordinate jurisdiction sitting in the same court and in the same case should not over-rule the decisions of each other,' except in the most unusual circumstances. TCF Film Corp. v. Gourley, 240 F.2d 711 (3d Cir. 1957). See, United States v. Wheeler, 256 F.2d 745 (3 Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103, rehearing denied, 358 U.S. 913, 79 S.Ct. 229, 3 L.Ed.2d 234 (1958), and Carnegie Nat. Bank v. City of Wolf Point, 110 F.2d 569 (9th Cir. 1940). A further expression of this concept is found in the rule that where a judge has decided the effect of a particular document or transaction, a judge of co-ordinate jurisdiction should not, even in an entirely separate case, decide that the same document is of a different effect. See e. g. United States v. Citizens National Trust and Savings Bank, 166 F.Supp. 410 (S.D. Cal.1958), affirmed, 270 F.2d 128 (9th Cir. 1959).

"Finally, this important principle has given rise to another rule, which is directly applicable to the case at hand. That is the rule that where a judge has decided a question of law in one manner a judge of co-ordinate jurisdiction should not normally undertake to decide it another way. This rule, based upon judicial comity as well as good judicial administration, is of great universality. See e. g., In re Naturalization of Alacar, 196 F.Supp. 564 (D.Hawaii 1961); Rojas-Gutierrez v. Hoy, 161 F.Supp. 448 (S.D.Cal. 1958), affirmed, 267 F.2d 490 (9th Cir.

1959); Brusselback v. Cago Corp., 24 F.Supp. 524 (S.D.N.Y.1938); and the multitude of federal and state court cases cited in 21 C.J.S. Courts § 196, note 94."

■ In the second place, it is my judgment that it was the intention of the Congress by the enactment of the Bank Merger Act to immunize this particular merger from all further attacks on the ground that it violated the law. I do not have the report of the House Committee on Banking and Currency before me, but the brief for the defendants quotes the following from the report and as so represented to the court I consider it authentic:

"Your Committee considered carefully what to do with the six banks against which the Department of Justice now has cases pending. The Attorney General strenuously opposed any legislation which might relieve these six banks from further prosecution under the antitrust laws. Other witnesses urged equally strongly that all six mergers should be relieved of any further liability under the antitrust laws. Three of these mergers were consummated and the antitrust suits instituted before June 17, 1963, when the Supreme Court for the first time (United States v. Philadelphia National Bank, 374 U.S. 321 [83 S.Ct. 1715, 10 L.Ed.2d 915]) held that bank mergers were subject to section 7 of the Clayton Act. These three cases were the Lexington, Ky., merger, the Manufacturers Hanover merger in New York City, and the Continental Illinois merger in Chicago. Three other mergers—in California, Tennessee, and St. Louis—were consummated after the Philadelphia decision and with knowledge of its possible effect on their situations.

"Under these conditions, your committee took the position that the first three mergers—the 'pre-Philadelphia' mergers—(of which defendant's was one) should be exempted from Section 7 of the Clayton Act and section 1 of the Sherman Act, like all other

mergers consummated before the Philadelphia case. These three banks, acting in good faith, and their depositors and other customers and their communities should not be required to suffer the confusion, the disruption, and the losses which would result from efforts to unscramble them."

In the light of the whole history of this litigation and as the record now stands, it is my opinion that the merger of these two banking houses must be upheld.

An order in conformity with this opinion is this day entered.