Tom GOLDEN, Administrator of the Estate of Earnest Kincheloe Lam, Deceased, by Arthur Dethridge, Successor Administrator and Katherine Lam, now Katherine Finley, Appellants,

v.

GRACE FAITH TABERNACLE, also known as Faith Tabernacle, and Houchens Foundation Successor to V. S. Andrews, Appellees.

Court of Appeals of Kentucky.

Jan. 26, 1968.

Rehearing Denied March 29, 1968.

L. B. Weir, Madisonville, for appellants.

Paul R. Huddleston, Bowling Green, for Grace Faith Tabernacle.

Bell, Orr & Reynolds, Bowling Green, for Houchens Foundation.

HILL, Judge.

This action was instituted September 10, 1962, by the appellants as personal representatives of the estate of Earnest Kincheloe Lam, an itinerate preacher, to recover $545, for salary in arrears, and $2000, claimed to have been promised Lam in the articles of incorporation of Grace Faith Tabernacle for "labor and donations" contributed by him in 1955 during the early stages of construction of the church building at Bowling Green, Kentucky.

By amended answer and counterclaim filed January 2, 1963, appellees sought to recover the sum of $8086.17 from the estate of Lam for money "took and converted" by Lam from funds belonging to the church.

At the conclusion of a jury trial held February 8 and 9, 1965, the jury returned a verdict for appellees of $1. Judgment was entered in that amount and the complaint dismissed. This appeal followed.

The above dates are given as they are important in the light of questions argued by appellants.

A large part of the appellants' 28-page brief and the appellees' 37-page brief is devoted to the exaltation or degradation of Preacher Lam. Appellants contend Lam, although having limited education, was "called" to preach to the poor people "across the track." Appellees counter with the argument that Lam was a "rogue of religion" like unto "Lucifer" and "Judas Iscariot," "hypocrites," "jovial frairs," and other "false prophets."

Preacher Lam died in 1962; and if we subscribe to the doctrine that a man must personally make his own peace with the Lord, it is too late for the appellants, the appellees, or this court to change the moral status of Preacher Lam. The allegations of the amended answer and counterclaim, charging that Preacher Lam "took and converted" church funds to his own use, bring into question his moral or immoral characteristics. This question was thoroughly, and perhaps excessively, aired before the jury, including reports that upon being granted a one-year leave of absence from the church in 1956, Preacher Lam left with an eighteen-year-old maiden and was later convicted of crimes in Illinois and Tennessee.

We list verbatim the two points raised by appellants:

1. "The court committed error when it failed to pass on all the pleadings and proof then in the record as submitted to the court by order entered November 18th, 1963. This includes Appellants' motion to complete case to a final judgment and Appellants' motion for summary judgment.

2. "The court erred when it set this case for a jury trial and permitted testimony in the nature of mistake in accounting to be given when no pleading claiming mistake had been filed herein concerning the final settlement already made with Appellants' decedent on December 10, 1956."

The order submitting this cause for final trial, entered November 18, 1963, was signed by the Honorable John B. Rodes, then judge of the circuit court, who shortly thereafter vacated his office. He was succeeded by the Honorable Robert M. Coleman, who entered a partial judgment March 20, 1964, awarding judgment to V. S. Andrews, mortgagee for his debt. It also impressed the tabernacle property with a lien and ordered a sale of the property. No reference was made in this partial judgment to the claim of Lam. Numerous pleadings, amended pleadings, and motions were made by both parties between March 20, 1964, the date of the entry of the partial judgment, and January 4, 1965, when an order was entered setting this case for trial on February 8, 1965, "on all the issues." No mention is made of a jury trial in this order, although on the following day appellants filed a paper in which they noted an objection and exception to the assignment of the case for trial by jury.

■ A jury trial was demanded in the very first answer and counterclaim filed November 16, 1962. It is true, we think, that the order of submission entered by Judge Rodes contemplated a trial of the issues by the court without a jury. However, this makes no difference as Judge Rodes had an absolute right, even after the entry of his order of submission, to later order a jury trial. Certainly, Judge Coleman had the same power. This is the answer to the first part of appellants' Point I. Also included in Point I is the contention that appellants were entitled to summary judgment. We find this contention wholly without merit.

The above discussion also covers a portion of appellants' Point II. Appellants also argue in Point II that the trial court erred in "permitting testimony in the nature of mistake in accounting to be given when no pleading claiming mistake had been filed."

Appellees denied owing the Lam estate $2000 mentioned in the articles of incorporation. Conceding for the purpose of argument that the articles of incorporation were valid and not a forgery as appellees contend, they amounted to nothing more than evidence of debt. Appellees' evidence that portions of the articles of incorporation were forgeries is admissible without pleading for reformation.

We think, in conclusion, that appellants were afforded a fair and impartial trial by both the trial court and the jury. The verdict is amply supported by substantial and competent evidence and may not be disturbed. Cf. Southern Railway Co. v. Kelley Construction Co., Ky.App., 406 S. W.2d 305.

The judgment is affirmed.

All concur.