Patricia Ann HERRING, Individually and as next friend of Karla Diane Herring, a minor, Appellant,

v.

Jo Ann Bolton MOORE, Executrix, etc., Appellee.

Jo Ann Bolton MOORE, Executrix, etc., Cross-Appellant,

v.

Patricia Ann HERRING, Individually, etc., Cross-Appellee.

Court of Appeals of Kentucky.

Aug. 5, 1977.

Rehearing Denied Feb. 10, 1978.

**96**

W. Pelham McMurry, Paducah, for appellant.

Michael R. Tilley, Charles A. Williams Associates, Paducah, for appellee.

Before HOGGE, VANCE and WINTER-SHEIMER, JJ.

VANCE, Judge:

The primary question presented by this appeal is whether, under the circumstances of this case, the death of Ted F. Herring terminated, by operation of law as of the date of his death, his obligation to make payments for the support of his infant adopted daughter. The trial court held as a matter of law that the payments terminated upon his death. We reverse.

Ted Herring and his wife, Patricia Herring, entered into a separation agreement on December 8, 1971 which provided that the husband would pay to the wife for the maintenance, support and education of the parties' infant child, the sum of One Hundred Fifty Dollars ($150.00) per month *to continue until said child attains the age of eighteen years or becomes emancipated, whichever occurs first.* The divorce judgment incorporated the terms of the contract.

Ted Herring died in December, 1974 at which time his infant daughter was only twelve years old. His will bequeathed to her the sum of $10.00 and directed that sum to be the only amount paid to her out of his estate.

Patricia Herring, on behalf of her daughter, petitioned the court to commute the future child support payments to a lump sum pursuant to KRS 403.250(3). The appellee responded that: (1) child support payments should be revoked due to changed circumstances; (2) no need could be shown for commutation to a lump sum; and (3) KRS 403.250(3) is unconstitutional. KRS 403.250(3), which became effective after the agreement was signed but before the judgment was entered, provides that:

"Unless otherwise agreed in writing or expressly provided in the decree, the provisions for the support of a child are terminated by emancipation of the child but not by the death of the parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked, or commuted to a lump sum payment, to the extent just and appropriate in the circumstances."

The case was tried on a stipulation of facts wherein it was agreed that Ted Herring made the payments required by the contract and the judgment until he died; that the daughter presently resides with her mother who has not remarried; that the daughter is an eighth grade student who has no estate of her own; that the mother is self-employed and has adequate resources to support the child, and that Ted Herring left a net estate of approximately $64,000.00. Under the terms of his will, all except for $10.00 of his estate would pass to Jo Ann Bolton Moore who qualified as the executrix of his estate. As a result of Ted Herring's death, the Social Security Administration pays to Patricia Herring the sum of $259.50 per month for the use and benefit of the infant daughter.

On December 31, 1975 judgment was entered holding that $1,800.00 in child support payments had accumulated to that time and should be paid from the estate and the future payments should be commuted to a lump sum as provided in KRS 403.250(3).

Within 10 days a motion was filed to amend the judgment pursuant to CR 52.02. By reason of the general election of November, 1975, a different judge occupied the bench when the motion was heard. The motion was granted upon the ground that the right of the child to receive child support was based upon a contract devoid of any expression of an intention of the parties that payments would continue beyond the lifetime of Ted Herring. The chancellor concluded therefore that the obligation for child support ceased as of the date of the death of Ted Herring. The judgment, as amended, absolved the estate of Ted Herring from further liability for child support.

The first attack made on the judgment is that a successor judge is without authority to reverse a decree of his predecessor on a motion to amend judgment, citing 48 C.J.S. *Judges* § 56, page 1021 and 20 A.L.R.Fed. pages 16–18.

There is ample authority for the proposition that a successor judge should use the greatest restraint and caution in reversing the judgment of a predecessor.

This concept was well expressed in *U. S. v. First National Bank and Trust Co. of Lexington,* 263 F.Supp. 268 (E.D.Ky., 1967) by Judge Swinford as follows:

" . . . For a judge of coordinate jurisdiction to reverse a judgment of a fellow judge who tried the case, saw and heard the witnesses testify and recorded his findings and conclusions, both of law and fact, in a lucid opinion, is to do disservice to the law and create disrespect for it. There must be an end to litigation and I can well understand why lay people would be thoroughly confused if a question of law at nine o'clock was decided by one judge and at ten o'clock the same question in the same case was decided to the contrary by another judge from the same bench. While there may be instances in which such a reversal would be justified, this is not one of them. Such a legal prerogative is questionable under any circumstance and I personally hold to the view that the law would be best served if reviews of decisions of trial judges were limited to appellate tribunals.

Notwithstanding my personal view of the matter, I recognize that a judge of coordinate jurisdiction does have the power to reexamine a prior decision of a fellow judge where there is a patent error. I find no such error in this record. A succinct statement of the law on this subject is found in the following quotation from the opinion in the case of *In re Carmona,* D.C., 224 F.Supp. 497.

It is also expressed in the many cases which hold that 'judges of co-ordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other,' except in the most unusual circumstances. *TCF Firm Corp. v. Gourley,* 240 F.2d 711 (3d Cir. 1957). See, *United States v. Wheeler,* 256 F.2d 745 (3 Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103, rehearing denied, 358 U.S. 913, 79 S.Ct. 229, 3 L.Ed.2d 234 (1958), and *Carnegie Nat. Bank v. City of*

*Wolf Point,* 110 F.2d 569 (9th Cir. 1940). A further expression of this concept is found in the rule that where a judge had decided the effect of a particular document or transaction, a judge of co-ordinate jurisdiction should not, even in an entirely separate case, decide that the same document is of a different effect. See e. g. *United States v. Citizens National Trust and Savings Bank,* 166 F.Supp. 410 (S.D. Cal.1958), affirmed, 270 F.2d 128 (9th Cir. 1959).' "

Although a successor judge should exercise extreme caution in undertaking to review a judgment of his predecessor on a timely motion to amend, we hold he does have that authority. Kentucky has long adhered to the prevailing view that a successor judge may, upon timely motion or *sua sponte,* complete the uncompleted acts of a predecessor. *Jackson v. Commonwealth,* Ky., 445 S.W.2d 835 (1969); *Golden v. Grace Faith Tabernacle,* Ky., 424 S.W.2d 829 (1968). The court is an entity, not a person, and when one judge is replaced by another, whether the reason be death, disability, election or otherwise, the new judge is empowered to carry on the business of the court to the same extent as his predecessor, had he remained on the bench.

It is settled that a trial judge who has entered findings, conclusions and judgment can, upon timely motion, change his mind and enter new findings, conclusions, or judgment directly opposite to those first entered. *Department of Human Resources, Commonwealth of Kentucky v. Moore,* Ky., 552 S.W.2d 672, rendered April 8, 1977; *Carpenter v. Evans,* Ky., 363 S.W.2d 108 (1962). We see no reasonable basis for holding that a successor judge is without power to take an action which would have been appropriate by his predecessor.

We think, however, the amended judgment is erroneous. It absolves the estate of Ted Herring from further liability for child support payments on the ground that the obligation for such payments terminated as a matter of law at his death.

It is true that a contract for child support entered into prior to the enactment of KRS 403.250(3) is a personal obligation which terminates at death in the absence of expression of an intention that the support shall continue beyond the death of the obligated party. We need not consider here the applicability of KRS 403.250(3) because the contract for support and the judgment each specify that the payments shall continue until the child reaches her eighteenth birthday, unless sooner emancipated.

*Shepherd v. Shepherd,* Ky., 521 S.W.2d 74 (1975) is controlling. Although it related to maintenance for the wife rather than support for a child, the principle is the same. When a contract for maintenance or child support specifies that payments shall continue for a fixed period or until the happening of a contingency, the payments do not terminate as a matter of law with the death of the obligor.

The appellee filed a cross-appeal by which it sought a review of the correctness of the first judgment that was entered and later amended by the entry of the judgment appealed from. We are not cited authority for such a procedure. A cross-appeal can only be taken from a judgment. CR 74. The document cross-appellant seeks to have reviewed was amended pursuant to a timely motion and therefore never became a final judgment. For this reason the cross-appeal is dismissed.

The judgment is reversed for further proceedings consistent with this opinion.

ALL CONCUR.