RENDERED: NOVEMBER 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1386-MR

SCOTT EDWARD BITTER                                                          APPELLANT

v.     APPEAL FROM KENTON CIRCUIT COURT
       HONORABLE MARY K. MOLLOY, JUDGE
       ACTION NO. 19-CR-01250-001

COMMONWEALTH OF KENTUCKY                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Scott Edward Bitter appeals his convictions for trafficking in a controlled substance in the first degree and being a persistent felony offender in the first degree (PFO I).  We affirm.

A Covington police officer observed Robert Roberts hand money to Bitter in return for an unknown object.  According to the officer, Bitter swallowed something when he saw the officer approach.  The officer believed Roberts and Bitter had engaged in a drug transaction.

Officers found methamphetamine inside a wallet dropped by Roberts and nearly $500.00 in cash on Bitter's person. Thus, in late 2019 Bitter was indicted for one count of trafficking in a controlled substance (methamphetamine) in the first degree, one count of tampering with physical evidence and being a PFO I. Roberts was indicted for first degree possession of a controlled substance (methamphetamine) in the same indictment. The case was continually continued, at least partly due to the advent of the COVID-19 pandemic.

At a pretrial conference held in June 2021, Bitter's counsel orally asked the court to prohibit the Commonwealth from introducing into evidence recordings of two calls Bitter made from jail because their probative value was outweighed by their prejudicial value. Bitter did not argue that the Commonwealth illegally obtained the recordings. Accordingly, though the trial court and the parties treated Bitter's oral motion as one to suppress, it was actually a motion in limine. *Hernandez v. Commonwealth*, 671 S.W.3d 217, 228-29 (Ky. 2023) (defining a motion to suppress as one "seeking to exclude the introduction of evidence on grounds that the evidence was obtained unlawfully").[1]

---

[1] *See also, e.g.*, 75 Am. Jur. 2d *Trial* § 38 (2023) ("While the motion in limine resembles the more familiar motion to suppress, an important distinction exists between them, in that the motion to suppress asserts that items of evidence or confessions were illegally obtained and is grounded in constitutional right, mandating that an evidentiary hearing be held, while the motion in limine requests only a ruling that the characteristics of a particular piece of evidence give it potentially inflammatory aspects which appear to outweigh whatever materiality it could have at trial and is addressed to the discretion of the trial court. Suppression of evidence is not the

-2-

Kentucky Rule of Evidence (KRE) 103(d), titled "Motions in limine[,]" provides that a party can "move the court for a ruling in advance of trial on the admission or exclusion of evidence" and the court may rule on the motion "in advance of trial or may defer a decision on admissibility until the evidence is offered at trial." Crucially, a pretrial ruling on a motion in limine is interlocutory because KRE 103(d) further states that "[n]othing in this rule precludes the court from reconsidering at trial any ruling made on a motion in limine."

The trial court granted Bitter's motion in limine to exclude the jail phone calls, holding they were "highly prejudicial and not probative . . . ." The case eventually went to trial in July 2022, by which point the circuit judge who had issued the order granting Bitter's motion in limine had retired.

In opening argument, Bitter's counsel expressed an intent to call Roberts as a witness. Roberts had pleaded guilty, and his plea required him to testify truthfully at Bitter's trial. Nonetheless, the Commonwealth apparently had no intention of calling Roberts as a witness.

On the second, and final, day of trial, the Commonwealth told the new circuit judge presiding over the trial that it wished to play a fifteen-second snippet from one of the calls because Bitter had indicated in opening argument that he

appropriate remedy for a nonconstitutional violation; rather, the appropriate remedy is the grant of a motion in limine . . . .") (footnotes and citations omitted).

intended to call Roberts as a witness.[2]  The Commonwealth argued the clip was an admission by Bitter and went to Roberts' credibility.  The Commonwealth stated it had not brought up the issue before because it learned in Bitter's opening argument that he intended to call Roberts as a witness.[3]

Unsurprisingly, Bitter's counsel objected, stressing the prior judge's decision that the calls were inadmissible.  Bitter's counsel also expressed astonishment that the Commonwealth did not know Roberts would testify.  The court deferred ruling until after Roberts had testified.

During his testimony, Roberts admitted he and Bitter had been friends for years.  Roberts also admitted his memory of the precise events surrounding his and Bitter's arrest was hazy because he had been high at that time.  However, Roberts unequivocally testified that he had not purchased the methamphetamine in question from Bitter.  By contrast, in its cross-examination, the Commonwealth

---

[2] Because Bitter's pretrial motion regarding the phone calls was a motion in limine, not a motion to suppress, we reject Bitter's arguments that he is entitled to relief because the Commonwealth at trial failed to comply with the specialized provisions of Kentucky Rule of Criminal Procedure (RCr) 8.27, which governs motions to suppress.  First, Bitter's argument is facially peculiar because the Commonwealth sought to introduce evidence at trial, not suppress it.  The Commonwealth at trial sought a reconsideration by the court of its pretrial ruling on a motion in limine, an action expressly permitted by KRE 103(d).  Second, and in any event, RCr 8.27 applies to "only motions to suppress, *i.e.*, only requests for an exclusion of evidence on grounds it was acquired by unlawful means." *Hernandez*, 671 S.W.3d at 229.  Because no party in this action filed an actual motion to suppress, RCr 8.27 does not apply.

[3] The record does not contain a subpoena for Roberts for the date Bitter's trial actually occurred, but it does contain a subpoena for Roberts for a June 2021 trial date.  Of course, the trial did not occur for over a year thereafter.

played body camera footage from the arresting officer in which Roberts said he had "just bought some dope" and wondered if Bitter had placed something in his (Roberts') wallet – where the methamphetamine was discovered. The defense then rested, having called Roberts as its only witness.

In rebuttal, the Commonwealth called a records custodian to testify that he downloaded and preserved a phone call from jail involving Bitter. The Commonwealth then recalled the arresting officer and began to ask him to identify Bitter's voice on the recording of the call. The court overruled Bitter's objection without comment. In other words, the new judge reversed her predecessor's order prohibiting introduction of the jail phone calls without explanation.

The snippet from the call was then played for the jury. A female – who was not named with particularity by the records custodian or the arresting officer – described Roberts as a "rat"; Bitter disputed that characterization and said that Roberts "kept it 100% real" and had told "them" that Roberts "didn't get a . . . thing from me . . . ." Despite lasting only roughly ten seconds, the snippet contained multiple profanities uttered by the female and one by Bitter.

The jury acquitted Bitter of the tampering with physical evidence charge but found him guilty of trafficking in a controlled substance and being a PFO I. In accordance with the jury's recommendation, the trial court sentenced Bitter to an enhanced eighteen-year sentence. Bitter then filed this appeal.

Though Bitter breaks it up into several interrelated questions, the overarching issue before us is whether the trial court erred by permitting the Commonwealth to play the clip of the phone call.

Under KRE 402, "[a]ll relevant evidence is admissible [unless otherwise prohibited by law] . . . . Evidence which is not relevant is not admissible." And evidence is *relevant* under KRE 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In the context of criminal law, evidence is considered relevant if it "tends to prove or disprove an element of the offense." *Little v. Commonwealth*, 272 S.W.3d 180, 187 (Ky. 2008) (internal quotation marks and citation omitted).

However, under KRE 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice . . . ." *See also, e.g., St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 540 (Ky. 2011). When "evaluating a trial court's balancing under KRE 403, [we] must consider the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum prejudicial value." *Yates v. Commonwealth*, 430 S.W.3d 883, 897 (Ky. 2014).

We review a trial court's rulings regarding the admissibility of evidence under the deferential abuse of discretion standard. *Mulazim v.*

*Commonwealth*, 600 S.W.3d 183, 190 (Ky. 2020).  Similarly, KRE 103(a) provides in relevant part that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."

If we determine the trial court erred by admitting the evidence, we must determine whether the error was harmless.  *See, e.g.*, *Douglas v. Commonwealth*, 374 S.W.3d 345, 352 (Ky. App. 2012); RCr 9.24.  An error regarding the admission of evidence, as with other non-constitutional errors, "will be deemed harmless . . . if we can say with fair assurance that the judgment was not substantially swayed by the error."  *Brown v. Commonwealth*, 313 S.W.3d 577, 595 (Ky. 2010).

Though it should be done with "the greatest restraint and caution[,]" a successor judge may reverse the interlocutory decisions of his or her predecessor. *Herring v. Moore*, 561 S.W.2d 95, 97 (Ky. App. 1977).  "The court is an entity, not a person, and when one judge is replaced by another . . . the new judge is empowered to carry on the business of the court to the same extent as [her] predecessor, had [she] remained on the bench." *Id.* at 98.  Of course, since the same judge may "change his mind and enter new findings, conclusions, or

judgment directly opposite to those first entered" then a successor judge generally may reconsider a decision made by his or her predecessor.[4] *Id.*

Moreover, KRE 103(d) expressly provides that a court may "reconsider[] at trial any ruling made on a motion in limine." *See also* 75 Am. Jur. 2d *Trial* § 38 (2023) ("A trial court's ruling on a motion in limine, as opposed to a motion to suppress, is tentative and precautionary in nature, and the trial court is at liberty to change its ruling on disputed evidence in its actual context at trial . . . .") (footnote and citations omitted). That is what occurred here, even though Bitter's oral pretrial motion was treated as a motion to suppress and even though the Commonwealth did not file a pretrial motion to reconsider.

We empathize with Bitter's counsel's displeasure and understand the new evidentiary decision forced Bitter's counsel to change her strategy on the fly. And counsel did so, gamely encouraging the jury in closing argument to construe the snippet as being consistent with the defense's theory that Roberts had not acquired the methamphetamine in question from Bitter. KRE 103(d) expressly allows this exact scenario to occur, even though a reversal at trial of a pretrial evidentiary decision inevitably requires counsel to amend his or her strategy on-

---

[4] We agree with Bitter that the Commonwealth should have asked the trial court if it could play the snippet instead of peremptorily stating its intent to do so. However, the trial court seemed to treat the Commonwealth's statement as an oral motion to reconsider the ruling on the motion in limine. Thus, the bottom line from a practical standpoint is that the Commonwealth eventually obtained a ruling from the trial court permitting the snippet to be played. We decline to exalt form over substance by reversing due to the Commonwealth's improper procedural approach.

the-spot. Thus, a court changing at trial its pretrial decision on a motion in limine does not inherently create either an impermissible "trial by ambush" or a due process violation, despite Bitter's arguments to the contrary.

Moreover, we reject Bitter's argument that reversal is required because the Commonwealth did not provide the new judge adequate reasons to overturn the former judge's decision on the admissibility of the call. KRE 103 does not contain language requiring a party seeking at trial to revisit a pretrial ruling on a motion in limine to provide new justifications for its request, nor has Bitter cited to precedent mandating such a requirement. In short, we must reject Bitter's argument that the new judge was irrevocably bound by the evidentiary rulings of her predecessor.

We now address whether the probative value of the snippet was substantially outweighed by its prejudicial impact. Our Supreme Court has held that "[t]he 'probative value' or 'probative worth' of evidence is a measure of how much the evidence tends to make the fact it is introduced to prove more or less probable. The probative force of a particular item of evidence is, therefore, inherently dependent upon the overall probativeness of other available evidence on that point." *Hall v. Commonwealth*, 468 S.W.3d 814, 823-24 (Ky. 2015). Under that standard, the snippet had little to no probative value.

In its brief, the Commonwealth asserts the snippet was relevant to show that "Bitter believed that Roberts was not a 'rat' and would not testify against him at trial." It is difficult to grasp readily how playing the snippet served to further that purpose. Stated differently, the snippet was played in rebuttal – but what did it materially help to rebut? Showing that Bitter expected Roberts to testify in basic accordance with his pretrial denials (such as on the day of his arrest, at the scene and at the hospital, and when he pleaded guilty) of having received the methamphetamine from Bitter helped the Commonwealth rebut nothing material. What element of the offense did the snippet help prove? Nothing in the snippet helped show that Bitter tampered with physical evidence or sold methamphetamine to Roberts.

The Commonwealth, by contrast, had played body camera footage during its cross-examination of Roberts in which Roberts had mused whether Bitter had placed something in his (Roberts') wallet – the location where the methamphetamine was discovered. And it is undisputed that Roberts and Bitter were longtime acquaintances, so the jury already had a permissible basis from which it could have concluded that Roberts was biased in favor of Bitter. In short, we agree with the original trial judge, and Bitter, that the snippet had little to no probative value as it did not help prove any element of the charged offenses.

On the other hand, we disagree with Bitter that the call was significantly prejudicial. Bitter cites to no authority deeming evidence inadmissible or unduly prejudicial solely because the evidence contains profanity. Although the language in the snippet perhaps did not endear Bitter to the jury, he has not shown it materially prejudiced him. The majority of the profanities were uttered by the female and the profanity uttered by Bitter did not demonstrate any direct animus towards Roberts or the police. We cannot accept Bitter's argument that the profanities in the clip meant it was highly prejudicial. After all, the jury acquitted Bitter of the tampering charge, despite having heard the profanities.

Similarly, Bitter argues the fact that the call was made while he was in jail, several weeks after his arrest, was prejudicial. But Bitter did not ask the trial court for any type of admonition that it could not consider as evidence of his guilt the fact that he was in jail prior to trial, including when the phone call in question occurred. Nor does Bitter point to where the Commonwealth stressed to the jury the fact that the call showed Bitter had remained in jail awaiting trial. And, again, the jury could not have been inflamed against Bitter because he spent time in jail prior to trial because it acquitted him of the tampering charge. At most, the fact that the phone call occurred while Bitter was in jail was minimally prejudicial.

In sum, the call had little to no probative value but Bitter has also not shown that it was significantly prejudicial. "The task of weighing the probative

-11-

value and undue prejudice of proffered evidence is inherently factual and, therefore, within the discretion of the trial court." *Burdette v. Commonwealth*, 664 S.W.3d 605, 617 (Ky. 2023). From this distant appellate vantage point, it frankly is difficult to understand fully the Commonwealth's zeal in seeking to play the snippet to the jury. Regardless, Bitter has not shown that the snippet's low prejudicial impact substantially outweighed its low probative value. In such a state of relative evidentiary equipoise and affording the snippet its maximum probative value and minimizing its prejudicial impact, we discern no abuse of discretion by the trial court in its admission. Our conclusion is buttressed by the fact that the clip occupied only a few seconds of a two-day trial. In sum, Bitter has not shown how playing the snippet materially impacted his substantial rights.[5] KRE 103(a); RCr 9.24.

At most, the admission of the snippet was a harmless error. Bitter has not shown that it "would be inconsistent with substantial justice" for the jury's verdict to remain undisturbed. RCr 9.24. Indeed, although factually distinguishable, our Supreme Court has deemed admission of evidence depicting a criminal defendant's usage of profanity to be, at most, a harmless error. *Baumia v.*

---

[5] Although unpublished, and therefore not binding, our Supreme Court recently reached a similar conclusion when asked to assess the propriety of playing a brief clip to a jury. *Sar v. Commonwealth*, 2021-SC-0548-MR, 2023 WL 2622032, at *4 (Ky. Mar. 23, 2023) ("In sum, we cannot conclude that the trial court abused its discretion in admitting the five-second clip showing Phan's face and upper torso . . . . The miniscule quality of the clip only underscores our determination that the five-second clip could not have been unduly prejudicial.").

*Commonwealth*, 402 S.W.3d 530, 543-44 (Ky. 2013). Given the other evidence, both favorable to and damning of Bitter, and the extremely brief nature of the snippet, Bitter has not demonstrated that the admission of the clip "substantially swayed" the judgment. *Brown*, 313 S.W.3d at 595.

We have examined the parties' briefs and deem any argument not discussed herein to be irrelevant, redundant, or otherwise without merit.

For the foregoing reasons, the Kenton Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jennifer Wade
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky