LEXINGTON INVESTMENT
COMPANY and Matthew
Stockham, Appellants

v.

Randy WILLEROY; Cliff Stidham;
and Lynn Stidham, Appellees.

No. 2010–CA–001027–MR.

Court of Appeals of Kentucky.

March 1, 2013.

As Modified March 22, 2013.

Denise H. McClelland, Lexington, KY, for appellants.

Lynn C. Stidham, Lexington, KY, for appellees.

Before KELLER, MAZE, and MOORE, JUDGES.

## OPINION

MAZE, Judge:

Lexington Investment Company, Inc. and Matthew Stockham (collectively, "the Brokers") appeal[1] from an order and judgment by the Fayette Circuit Court denying their motion for sanctions and attorney fees against Randy Willeroy (Willeroy) and his attorneys Cliff and Lynn Stidham (Stidham). The Brokers assert that Willeroy and Stidham brought an action against them without adequately researching the factual and legal basis for the claims. Consequently, they argue that the trial court abused its discretion by denying their motion for sanctions pursuant to Kentucky Rule of Civil Procedure ("CR") 11. But while Willeroy's claims against the Brokers were not successful, we conclude that he and Stidham had a reasonable basis for the claims at the time the action was filed. Hence, we affirm the trial court's denial of the Brokers' motion for sanctions.

The claims underlying this appeal arise from the management of the estate of Nancy Willeroy, who died on February 7, 2004. Her estate of $3,920,455 was left to her sons, Randy Willeroy and Jeff Willeroy. Her attorney, Gerry Calvert, and mother, Maxine Campbell, were appointed as the co-administrators of the estate. However, Calvert primarily managed the estate.

Shortly after Nancy Willeroy's death, Calvert opened an investment account with Morgan Keegan through its registered representative broker, Matthew Stockham. In April 2004, Stockham left Morgan Keegan and joined Lexington Investment Company. At Stockham's request, Calvert transferred the account to the new company. The account remained with the brokers through 2006 pending final settlement of Nancy Willeroy's estate.

---

1. Case No. 2010–CA–001027–MR was originally a cross-appeal; however, the direct appeal was dismissed by a prior order of the Court. The Court will therefore use the terms appeal and appellant throughout this opinion.

During the course of conducting periodic settlements, Willeroy consulted with outside counsel, Cliff Stidham, who raised issues regarding management of the estate assets by the co-administrators, the Brokers and other professional advisors. In particular, he raised issues regarding payment of excessive compensation, improperly filed tax returns resulting in tax overpayments and penalties, and improperly invested estate assets resulting in substantial losses.

Stidham raised additional concerns about the management of the estate after the filing of the second periodic settlement in August of 2006. On August 30, 2006, Stidham sent a letter to Calvert raising these concerns. Stidham also noted that the applicable one-year statute of limitations period would run out on September 19, 2006. Stidham proposed that the parties enter into an agreement tolling the statute of limitations to allow further investigation. Stidham sent a similar proposal to the Brokers on September 12, 2006.[2]

On September 14, 2006, the Brokers executed a tolling agreement and returned it to Stidham. However, Calvert did not execute an agreement. Consequently, on September 18, 2006, Willeroy brought this action against Calvert for professional negligence. Willeroy also asserted claims against the Brokers for unsuitable trading, failure to properly advise Calvert, and churning of the estate account.

Willeroy filed an amended complaint on November 1, 2006, adding additional parties and raising additional claims. Thereafter, the Brokers filed a motion to dismiss, arguing that Willeroy had failed to state a factual basis for his claims against them. The trial court denied the motion to dismiss on January 18, 2007, but indicat-

ed that summary judgment would be appropriate if the evidence established that the co-administrators had directed or authorized the transactions about which Willeroy complained.

■ After filing an answer and conducting some discovery, the Brokers filed a motion for summary judgment. After considering arguments of counsel and evidence of record, the trial court granted the motion on September 7, 2007. The court concluded that Calvert alone had directed and authorized the transactions which resulted in the losses and commissions and that, but for the various changes in investment strategies which Calvert had directed, the investments would not have sustained a loss on additional commissions. As a result, the trial court concluded that only Calvert could be liable for the losses, excessive fees and tax liabilities.

After entry of summary judgment, the Brokers filed a motion for sanctions and attorney fees pursuant to CR 11. The Brokers asserted that Willeroy had brought this action without adequately investigating the factual bases for the claims against them. The trial court denied the motion in an order entered on September 17, 2008. The Brokers later filed a renewed motion for sanctions, which the trial court denied on August 25, 2009.

The claims against Calvert proceeded to a jury trial in November and December of 2009. At the conclusion of the trial, the jury found that Calvert had breached his fiduciary duties and awarded damages totaling $207,451.61. However, the jury declined to award punitive damages. In its judgment confirming the jury verdict, the trial court reversed a prior order ordering Calvert to reimburse excessive attorney

**2.** Stidham also sent the proposed tolling agreement to the estate's accountants and tax advisors. There is no indication in the record that any other party executed the agreement.

fees. Based on the jury's findings that Calvert's actions did not rise to the level of legal malpractice and that his fees were not excessive, the trial court concluded that its prior order was not appropriate.

Willeroy filed a notice of appeal from portions of the trial court's orders and judgment. However, his appeal was dismissed for failure to name an indispensible party. The Brokers also filed a notice of appeal from the trial court's orders denying their motion for sanctions and attorney fees.

As a preliminary matter, Willeroy also filed a motion to dismiss the Brokers' appeal for failure to name a necessary party. As noted above, Willeroy's appeal was dismissed for failure to name the estate's personal representative, C. Thomas Barker, as a party to the appeal.[3] Willeroy notes that the Brokers did not name Barker as a party to their appeal. Willeroy further argues that, if the estate's personal representative is a necessary party to afford complete relief in his appeal, then the personal representative is also a necessary party to afford complete relief in the Brokers' appeal.

Willeroy notes that the Brokers had asked the trial court to hold funds in escrow pending the outcome of their appeal from the denial of sanctions. But since the trial court denied that motion, the personal representative is not holding any estate funds to pay a potential award of attorney fees. Moreover, the Brokers sought sanctions and fees only against Willeroy and his counsel, and not the estate. Although the Brokers sought to hold estate funds in escrow to secure a potential award of attorney fees, Willeroy and his counsel would be solely liable for any po-

tential award. Therefore, the personal representative is not a necessary or indispensible party to the Brokers' appeal.

 We now turn to the central issue in this appeal: the denial of the Brokers' motions for sanctions and attorney fees against Willeroy. CR 11 requires that all pleadings be signed by the party or counsel of record. The rule further provides, in relevant part:

> The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

 CR 11 does not provide substantive rights to litigants but is a procedural rule designed to curb abusive conduct in the litigation process. *Clark Equip. Co., Inc. v. Bowman,* 762 S.W.2d 417, 420 (Ky. App.1988). It is intended only for exceptional circumstances. *Id.* The test to be

---

**3.** On October 21, 2011, Willeroy filed a motion for discretionary review, seeking review of the dismissal of his appeal for failure to join a necessary party. The Kentucky Su-

preme Court denied the motion for discretionary review in an order entered on June 13, 2012.

used by the trial court in considering a motion for sanctions is whether the attorney's conduct, at the time he or she signed the allegedly offending pleading or motion, was reasonable under the circumstances. *Id.* Where a trial court denies a motion for sanctions under CR 11, this Court's review is limited to a determination of whether the trial court abused its discretion. *Id.* The test for abuse of discretion is whether the trial court's ruling was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000).

In arguing that sanctions were justified, the Brokers primarily focus on two significant facts. First, the Brokers emphasize that they signed the tolling agreement which Willeroy had requested. Thus, the Brokers contend that Willeroy did not need to bring the action against them immediately, but could have conducted further investigation. And second, the Brokers contend that Willeroy's counsel admitted during litigation that he had not conducted an adequate review of the factual basis for the claims against them. However, we agree with Willeroy that these facts, while relevant, do not compel an award of sanctions.

■ First, the Brokers' execution of a tolling agreement does not demonstrate a lack of adequate investigation of the material facts.[4] Indeed, Stidham did not draft separate tolling agreements for each potential defendant. Rather, his proposed tolling agreement included all potential defendants. Furthermore, Stidham's September 12, 2006, letter to the Brokers expressly stated that all parties must execute the proposed tolling agreement:

Please note that because of the nature of Mr. Willeroy's potential claims and the legal relationship between the agents and the estate, *we believe it is necessary for all parties to sign the tolling agreement.* If any party decides not to sign, we will have to *[sic]* choice but to beat the clock and file a lawsuit at the beginning of next week. (***Emphasis in original*** ).

Since Calvert and the other potential defendants declined to execute the tolling agreement, the tolling agreement did not formally become effective. Furthermore, Stidham had received information indicating that Calvert and the Brokers were discussing a mutual defense agreement. Although the Brokers might have been estopped from relying on the statute of limitations if Willeroy had postponed bringing his claims against them, Willeroy had a reasonable basis to bring the action immediately after all of the potential defendants refused to sign the agreement.

We also disagree that the record compels a finding that Stidham lacked a reasonable basis for bringing this action against the Brokers. The Brokers contend that Stidham failed to adequately investigate Calvert's role in directing the investments which caused the losses. They maintain that if Stidham had adequately investigated these facts, then he would have discovered that the estate's account was a non-discretionary account and that Calvert made all the investment decisions. They further contend that Willeroy had access to all relevant account statements prior to filing this action and could have reasonably learned of the contested transactions and that Calvert had authorized them.

4. The Brokers suggest that Willeroy's actions in filing the action immediately after they executed the tolling agreement demonstrates a lack of good faith. However, a party's bad faith or lack of good faith is not relevant to determine whether sanctions are justified under CR 11. *Louisville Rent–A–Space v. Akai,* 746 S.W.2d 85, 87 (Ky.App.1988).

Finally, the Brokers point to statements by Stidham at the hearing on their motion to dismiss on January 17, 2007. In the course of argument, Stidham admitted that he did not know what transpired between the co-administrators and the Brokers, nor did he know whether the transactions at issue were directed by Calvert or were at the discretion of the Brokers. The Brokers contend that these statements amount to an admission by Stidham that he did not know what directions occurred between the Brokers and the co-administrators. Thus, the Brokers assert that Stidham could not have had a reasonable factual basis for filing the action against them.

But prior to filing this action, Willeroy and Stidham raised significant questions about unsuitable investments resulting in a significant loss of estate assets. Willeroy also asserted that the size and frequency of certain trades in the estate account suggested churning, resulting in payment of excessive brokerage commissions. In its September 7, 2007, order dismissing Willeroy's claims against the Brokers, the trial court pointed to the undisputed evidence that Calvert had authorized all investment decisions. In addition, Calvert admitted that the Brokers had advised him that the trades at issue would cause a loss on the principal value of the investments. As a matter of law, the trial court found that Calvert would be solely liable for any wrongful conduct involving these investments.

However, the trial court reached these conclusions after Willeroy had taken Calvert's deposition and had obtained discovery from him. The question of who directed and authorized these transactions was not obvious when this action was filed in September of 2006. The Brokers contend that Calvert had kept Randy and Jeff Willeroy advised of his investment decisions during the administration of the estate and had provided them with all relevant account statements. As a result, the Brokers argue that Willeroy should have known that Calvert was directing the investment strategies for the estate. However, the record shows that Randy and Jeff were undergoing drug treatment during 2005 and were not fully engaged with Calvert's actions.

The Brokers also assert they were willing to provide any relevant documentation to Willeroy and it was not necessary for him to bring this action against them in September 2006. But as previously noted, Stidham had received information that Calvert and the Brokers were discussing a mutual defense agreement at that time. Even in the absence of such information, Calvert was the Brokers' client, and Willeroy and Stidham had reason to believe that their interests were not adverse.

Although Stidham conceded that he did not know exactly what transpired between the co-administrators and the Brokers, he had a reasonable basis to believe that either Calvert or the Brokers had engaged in wrongful conduct causing these losses. Given the looming statute of limitations deadline and Calvert's reluctance to provide supporting documentation, Willeroy's and Stidham's decision to bring these claims against the Brokers in September of 2006 was not unreasonable. Therefore, the trial court did not abuse its discretion by denying the motion for sanctions under CR 11.

Accordingly, the order of the Fayette Circuit Court is affirmed.

ALL CONCUR.