RENDERED:  SEPTEMBER 12, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0119-MR

BENJAMIN G. DUSING																	APPELLANT


v.							APPEAL FROM KENTON CIRCUIT COURT
							HONORABLE THOMAS A. RAUF, JUDGE
							ACTION NO. 19-CI-00560


JILL BAKKER																	APPELLEE

AND


NO. 2024-CA-0968-MR

BENJAMIN G. DUSING																	APPELLANT


v.							APPEAL FROM KENTON CIRCUIT COURT
							HONORABLE THOMAS A. RAUF, JUDGE
							ACTION NO. 19-CI-00560


JILL BAKKER																	APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, LAMBERT, AND MOYNAHAN, JUDGES.

LAMBERT, JUDGE:  Benjamin Dusing appeals *pro se* from two orders of the Kenton Family Court finding him in contempt and imposing sanctions under Kentucky Rule of Civil Procedure (CR) 11.  Because the appeals have a common nucleus of facts and spring from the same underlying action in family court, we have elected to resolve both in this combined Opinion.  We affirm in both appeals.

These appeals have a lengthy, bitter procedural history, including multiple previous appeals to this Court.  Consequently, the Family Court record is thousands of pages long and fills numerous boxes.  In the interests of judicial economy, we shall address only the essential factual and procedural history and the arguments we conclude merit discussion.  Relatedly, we have considered the entirety of the parties' briefs but decline to address any arguments contained therein which are irrelevant, redundant, underdeveloped, or otherwise unnecessary for us to examine.  *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

We now turn to relating the essential underlying history of these appeals.  Dusing and Jill Bakker, who were never married, are the parents of a minor daughter (Child).  The parties have engaged in protracted litigation regarding matters relating to Child, such as custody, timesharing, and child support.

In what we shall refer to as the April 2021 order, the Family Court found that Dusing had physically and emotionally abused Bakker and thus awarded Bakker sole custody of Child. Because of the extreme acrimony between the parties, the Family Court ordered that they communicate with each other using the electronic communication system Our Family Wizard (OFW) and those OFW messages:

> shall be strictly used to convey information about the child or to inquire about the child. No opinions are to be expressed, no advice is to be given and no other subjects are to be addressed . . . . The level of emotional abuse evidenced by the thousands of texts and emails is so extreme that contact by respondent [Dusing] with petitioner [Bakker] must be held to an absolute minimum . . . . Emails on Our Family Wizard are limited to one per day per parent, not to exceed 750 words. Anything that needs a reply will be handled in the next day's email.

Dusing has been held in contempt multiple times, often for violating the April 2021 order. Relevant here, in October 2021, the Family Court held a lengthy hearing on various outstanding motions. One of the purposes of that hearing was to impose a final sentence upon Dusing for a contempt finding for which the court had conditionally sentenced him to seven days in jail. However, the time allotted for the hearing expired before the contempt sentencing could occur.

Soon thereafter, "Dusing posted an incredibly disturbing and threatening video on Facebook" which contained a "diatribe" against the Family

-3-

Court's law clerk and Bakker's attorney. *In re Dusing*, 701 S.W.3d 393, 398 (Ky. 2024). The "video had the effect of terrorizing two lawyers and was sufficiently concerning to [Kenton Family Court] Judge Mehling that he recused."[1] *Id.* at 411.

Thus, a special judge was appointed to preside over the proceedings. The special judge presided over the Family Court proceedings until 2023, when the proceedings were assigned to Kenton Family Court Judge Thomas Rauf. The special judge dutifully resolved other matters while presiding over the case but did not sentence Dusing for the previous contempt finding.

Judge Rauf soon instructed the parties to file memoranda listing the outstanding motions and issues. After the parties did so, the Family Court scheduled a multi-day hearing to resolve the pending matters, including finally sentencing Dusing for contempt of court. After the issue was discussed at the hearing, the Family Court sentenced Dusing to serve seven days in jail "as a result of his violation of the conditional discharge of his original 7-day sentence." Dusing apparently served that seven-day sentence.

---

[1] In February 2022, our Supreme Court temporarily suspended Dusing from the practice of law due to the video. *Inquiry Commission v. Dusing*, 647 S.W.3d 260, 264-65 (Ky. 2022). In September 2024, a majority of the Court suspended Dusing from the practice of law for three years, with no credit for the time he had been temporarily suspended, primarily for the inexcusable video. *In re Dusing*, 701 S.W.3d at 411. Two justices dissented, contending Dusing's "gravely contemptuous, unethical, and violent conduct" warranted a longer suspension. *Id.* at 420.

After conducting the multi-day hearing, the Family Court issued a lengthy order in early January 2024. Among other rulings, the court denied some of Bakker's motions but granted others after finding Dusing violated court orders and submitted motions or papers which violated CR 11.[2] The court ordered Dusing to pay some of Bakker's attorney fees. The court also found Dusing to be in contempt for violating the April 2021 order multiple times, primarily for failing to reimburse daycare expenses timely and posting impermissible OFW statements.

The court imposed lesser sanctions for many of the contempt findings but ordered Dusing to be jailed for some violations of the April 2021 order:

> This Court finds that, by clear and convincing evidence, Respondent [Dusing] willfully disobeyed the Court's April 5, 2021 [order] on multiple occasions. Various OFW messages were admitted exemplifying as such. As seen throughout this Order, Respondent has continually violated the Order pertaining to OFW communications

---

[2] In relevant part, CR 11 provides:

> Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name . . . . A party who is not represented by an attorney shall sign his pleading, motion, or other paper . . . . The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading, motion, or other paper is signed in violation of this rule, the court . . . shall impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . .

and has been found in contempt multiple times for [the] same. It seems that Respondent believes he is above the orders of this Court, which is unacceptable. Respondent is found to be in civil contempt.

Respondent is to be sentenced to 45 days['] incarceration at the Kenton County Detention Center with 15 days to be served and 30 days conditionally discharged upon the condition that, for the following 2 years, Respondent follow[s] the April 5, 2021[,] Order regarding the parameters of OFW communications. Respondent can purge the 15 days to be served by (1) scheduling in[-]person therapy with a provider at the Linder Center of HOPE, or a proposed psychiatrist submitted to the Court with the psychiatrist's vita and certification that they [sic] are experienced in the treatment of individuals with narcissistic personality disorder, (2) completing 20 sessions, in person or virtual as recommended by the psychiatrist, within 12 months of entry of this Order; (3) notifying the Petitioner that the psychiatrist has been scheduled and their [sic] contact information, (4) allowing the Petitioner to provide a letter of any concerns to the psychiatrist [along] with any five (5) relevant Orders of the Court, and (5) following all recommendations of the psychiatrist as to [the] treatment plan. Respondent can purge the remaining 30 days by completing 20 sessions in[-]person within 18 months of entry of this Order. Respondent shall pay the Petitioner $1,500.00 for reasonable attorney's fees for the cost of bringing this Motion.

Subsequently in the same order, the Family Court again found Dusing

to be in contempt:

On April 20, 2023, Petitioner filed a Verified Motion for Contempt and an Award of Attorney's Fees and Reimbursement of Expenses. Petitioner testified at the time of filing, Respondent owed her $2,914 in expenses that she [had] properly submitted through

-6-

OFW. He has since paid the expenses although it was not done so [sic] in a timely manner pursuant to Court Order. Respondent alleged inability to pay. However, he is still paying $2,500 in rent for an office he cannot use as a lawyer since his license is suspended. He is also paying at least two (2) individuals to work for him even though he alleges he is out of work and has had no income for 18 months. Additionally, Respondent recently netted approximately $295,000 from the sale of Utah rental property. Thus, Respondent has the ability to pay. . . .

Petitioner's April 20, 2023[,] Motion for Contempt is hereby **SUSTAINED**. This Court finds by clear and convincing evidence that Respondent willfully disobeyed this Court's April 5, 2021[,] order requiring Respondent to reimburse Petitioner for his portion of the daycare expenses pursuant to the 30/30 rule [under which the expenses were to be submitted within 30 days of being incurred and Dusing was to repay them within 30 days thereafter]. This has been a common reoccurrence throughout this matter, as evidenced by other portions of this Order. Petitioner is entitled to timely reimbursement from Respondent as has been ordered by this Court.

Respondent is sentenced to 60 days['] incarceration at the Kenton County Detention Center with 15 days to be served and 45 days conditionally discharged upon the condition that, for the following 2 years, Respondent follow[s] the April 5, 2021[,] Order regarding the parameters of OFW communications. Respondent can purge the 15 days to be served by (1) scheduling in[-] person therapy with a provider at the Linder Center of HOPE, or a proposed psychiatrist submitted to the Court with the psychiatrist's vita and certification that they [sic] are experienced in the treatment of individuals with narcissistic personality disorder; (2) completing 20 sessions, in[-]person or virtual as recommended by the psychiatrist, within 12 months of entry of this Order, (3) notifying the Petitioner

-7-

that the psychiatrist has been scheduled and their [sic] contact information, (4) allowing the Petitioner to provide a letter of any concerns to the psychiatrist [along] with any five (5) relevant Orders of the Court, and (5) following all recommendations of the psychiatrist as to [the] treatment plan. Respondent can purge the remaining 45 days by completing 30 sessions in[-]person within 24 months of entry of this Order. Respondent shall pay the Petitioner $1,500.00 for reasonable attorney's fees for the cost of bringing this Motion.

Dissatisfied, Dusing filed appeal No. 2024-CA-0119-MR.

After that appeal was filed, Bakker filed another motion to hold Dusing in contempt. As before, the motion primarily contended Dusing had failed to reimburse Bakker and had violated the family court's OFW restrictions.

After holding a hearing, the Family Court granted Bakker's motion in June 2024. The court concluded Dusing had posted numerous messages which violated the April 2021 order's OFW guidelines. The court concluded that "[n]o alternative other than incarceration would be sufficient to address the violation of the Contempt [order] since monetary consequences, community service, and past sentences of incarceration ha[ve] not resulted in Respondent's compliance."

The court noted that it had previously ordered Dusing to serve 45 days in jail, "with 15 days to be served and 30 days conditionally discharged upon the condition that, for the following 2 years, Respondent [Dusing] follow[s] the April 5, 2021[,] Order regarding the parameters of OFW communications." Because Dusing had not followed the OFW parameters, the court held that "[t]he

-8-

conditional discharge of [Dusing's] sentence of 30 days is hereby revoked and [Dusing] shall be required to serve 7 days of that sentence." The court conditionally discharged the remaining 23 days of the 30-day sentence upon the condition that Dusing comply with the limitations on OFW communications contained in the April 2021 order. The court also held that Dusing "may still purge the 15 days" he had been ordered to serve by completing twenty therapy sessions by January 2, 2025, and by following his therapist's recommendations.

The court also held Dusing in contempt for failing to meet his repayment obligations. The court acknowledged that Dusing had repaid many of the expenses prior to the hearing, but those payments had not been within the thirty-day deadline established by the April 2021 order. The court found that Dusing "was financially able to pay the expenses at all times" even though he had testified he had no income since he had "sufficient resources (1) to maintain an office and staff without any profit motive, and (2) maintain a pool membership."[3] The court concluded "[n]o alternative other than incarceration would be sufficient to address the violation of the Contempt [order] since monetary consequences,

_____

[3] Dusing argues he was contractually obligated to continue to pay rent after his license to practice law was suspended, and so his rent payment was not a voluntary expense. However, Dusing's claim of penury is difficult to square with his continued employment of persons to work in a shuttered law office. Moreover, Dusing has not shown error in the Family Court's finding that Dusing had the resources to pay for a pool membership.

community service, and past sentences of incarceration ha[ve] not resulted in Respondent's compliance."

The court recounted that it had previously sentenced Dusing to sixty days' incarceration, with fifteen days to serve and forty-five days conditionally discharged upon the condition that Dusing comply with the OFW parameters for two years. Due to Dusing's noncompliance, the court revoked the conditional discharge of the 45-day sentence and ordered Dusing to serve seven days in jail, concurrent with the seven days he was ordered to serve for not following the court's OFW guidelines. The court conditionally discharged the remaining thirty-eight days upon the condition that Dusing comply with the April 2021 order's OFW restrictions and repayment guidelines for two years. The court also allowed Dusing to purge the original 15-days-to-serve sentence by completing twenty sessions with his therapist by January 2, 2025, and following all of his therapist's recommendations. Finally, the court ordered Dusing to pay $1,500.00 to Bakker for attorney fees incurred in bringing the motion for contempt.

Again dissatisfied, Dusing eventually filed appeal No. 2024-CA-0968-MR.

As a prefatory note, our review has been hampered by the numerous improper citations in Dusing's briefs. First, Dusing has provided some incorrect Southwestern Reporter citations. For example, Dusing cites to *Goff v. Goff*, 242

-10-

S.W.3d 728, 732 (Ky. App. 2007), on page three of his reply brief in Case No. 2024-CA-0968-MR. That citation – 242 S.W.3d 728 – leads to *Winfrey v. State*, 242 S.W.3d 723 (Mo. 2008). His citation to 242 S.W.3d 732 leads to *Estate of Downs v. Bugg*, 242 S.W.3d 729 (Mo. Ct. App. 2007). Dusing also repeatedly cites to *Clay v. Winn*, 434 S.W.3d 415 (Ky. Ct. App. 2014). That citation – 434 S.W.3d 415 – leads to *Baker v. Murray*, 434 S.W.3d 409 (Ark. Ct. App. 2014).[4]

Second, Dusing often improperly represents the holding of precedent. We shall not unduly extend this Opinion by noting each instance Dusing cites authority for a proposition which the authority does not reasonably support; instead, we shall provide a few representative samples. Page three of Dusing's opening brief in Case No. 2024-CA-0968-MR states: "Kentucky courts have emphasized the importance of procedural fairness and fundamental fairness in contempt proceedings. *See Mullins v. Commonwealth*, 956 S.W.2d 210, 213 (Ky. 1997) (highlighting that procedural due process requires fairness in legal proceedings)." Similarly, page three of Dusing's reply brief in that same appeal states "contempt sanctions must be based on current, willful violations – not on generalized disapproval of past actions or personality conflicts. *See Mullins v.*

---

[4] As Bakker notes in her brief in Case No. 2024-CA-0968-MR, the correct citation is *Clay v. Winn*, 434 S.W.2d 650 (Ky. 1968). Dusing admits on page four of his reply brief in that case that "the citation to *Clay* . . . was inadvertently included due to a citation error." But Dusing's curiously phrased admission does not address the fact that the incorrect Southwestern Reporter citation is not the only impropriety regarding his citations to *Clay*, as we shall next discuss.

*Commonwealth*, 956 S.W.2d 210, 213 (Ky. 1997) (holding that a contempt finding requires evidence of a present, willful violation and may not be based on generalized disapproval of past conduct)." But *Mullins* does not address (or even use the phrase) due process and does not involve contempt whatsoever.

Dusing similarly misrepresents *Clay* twice in his opening brief (each time using the same incorrect Southwestern Reporter citation) in Case No. 2024-CA-0968-MR. He asserts on page five of his brief that "[t]he failure to evaluate alternative [contempt] sanctions constitutes an abuse of discretion. *See Clay v. Winn*, 434 S.W.3d 415, 419 (Ky. Ct. App. 2014) (holding that incarceration should be the last resort in civil contempt cases)." *Clay* contains no such holding. On page seven of the same brief Dusing states "Kentucky law requires trial courts to explore all reasonable alternatives before imposing incarceration for civil contempt. *See Clay v. Winn*, 434 S.W.3d 415, 419 (Ky. Ct. App. 2014) (holding that courts must ensure that incarceration is the least restrictive means necessary to ensure compliance)." *Clay* contains no such holding.

We could impose sanctions upon Dusing but have leniently elected not to do so. However, we shall not search for the authorities for which Dusing provides an incorrect citation. Moreover, we shall not address Dusing's arguments when the only authority he cites does not actually support his argument. A citation to authority which does not support the proposition for which it is cited is the

-12-

functional equivalent of (even arguably worse than) failing to cite to authority at all, and "an alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005). We shall not rummage through centuries of Kentucky precedent to see if there is any support for a party's arguments.

In Case No. 2024-CA-0119-MR, we construe the main thrust of Dusing's scattershot arguments to be that Judge Rauf lacked the authority to conclude matters begun (but not finished) by a predecessor judge. We emphatically disagree.

Nearly a century ago, Kentucky's then-highest court held:

> The court does not die, fail, or go out of office, whatever may become of the incumbent; and when one incumbent fails to complete his [or her] work, but leaves behind such monuments and memoranda of what he [or she] did that from what he [or she] left there can be known just what he [or she] did, in other words, when he [or she] manifests but leaves unfinished an official act, his [or her] successor may complete it.

*Hoffman v. Shuey*, 223 Ky. 70, 2 S.W.2d 1049, 1052 (1928). Nearly fifty years later, we reiterated the same core principle: "The court is an entity, not a person, and when one judge is replaced by another . . . the new judge is empowered to carry on the business of the court to the same extent as his [or her] predecessor, had he [or she] remained on the bench." *Herring v. Moore*, 561 S.W.2d 95, 98

-13-

(Ky. App. 1977). Judge Rauf thus plainly had the ability to complete the tasks which his predecessor judge(s) did not finish since the powers and duties of a successor judge are coterminous with those of his or her predecessors.[5]

We also reject Dusing's argument that his due process rights were violated. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Ford Motor Company v. Duckworth*, 615 S.W.3d 26, 33 (Ky. 2021) (internal quotation marks and citations omitted).

The trial court held a lengthy hearing, so Dusing had a full opportunity to be heard. Dusing is simply incorrect when he argues that a meaningful opportunity to be heard "surely means the consideration of all of the relevant evidence *by a single trier of fact*." Carried to its logical conclusion, Dusing's argument would mean any matter pending when a judge recuses, resigns, dies, or otherwise ceases presiding over a case could not ever be resolved by a successor judge. The Kenton Family Court "is an entity, not a person" and Judge Rauf thus had the ability "to carry on the business of the court to the same extent as

---

[5] Our conclusion is not changed by the fact that a special judge presided over the case between the recusal of Judge Mehling and Judge Rauf becoming the presiding judge. Judge Rauf had the ability to resolve all matters which were pending at the time he became the presiding judge, and all the matters which arose thereafter.

-14-

his predecessor . . . ." *Moore*, 561 S.W.2d at 98. That principle particularly applies here since Dusing's video tirade caused Judge Mehling to recuse.

As to the timeliness of the hearing, Dusing argues the Constitution required the October 8, 2021, hearing to be "resumed right away." We disagree.

Ideally, all motions and pending matters in all courts should be resolved expeditiously. We recognize the multi-year gap between the ending of the October 2021 hearing and Judge Rauf's hearing in 2024 designed to resolve all then-pending matters was unusually lengthy. We also do not dispute Dusing's contention that the passage of time causes memories to fade. But we must again stress that the root cause of the delay which Dusing attacks is his inappropriate video tirade as that event led to the recusal of Judge Mehling.

Over a century ago, albeit in a factually distinguishable context, Kentucky's highest court quoted with favor a statement in a treatise that "[h]e who prevents a thing being done shall not avail himself of the nonperformance he has occasioned." *Dunscombe v. Amfot Oil Co.*, 201 Ky. 290, 256 S.W. 427, 429 (1923) (internal quotation marks and citation omitted). *See also, e.g.*, *Mullins v. Picklesimer*, 317 S.W.3d 569, 577 (Ky. 2010) ("Under the unclean hands doctrine, a party is precluded from judicial relief if that party engaged in fraudulent, illegal, or unconscionable conduct in connection with the matter in litigation. In a long and unbroken line of cases this court has refused relief to one, who has created by

-15-

his fraudulent acts the situation from which he asks to be extricated.") (internal quotation marks and citations omitted). Dusing cannot be permitted to perversely gain an advantage from his unacceptable misconduct.

Moreover, we reject Dusing's argument that the special judge's failure to rule on pending matters, such as sentencing Dusing for contempt, means those matters had been abandoned. Dusing cites to nothing in the record to support his argument, nor does he cite to supportive authority. The proceedings may have been delayed but they were not abandoned.

Relatedly, we reject Dusing's specious contention that Judge Rauf's decisions (such as sentencing Dusing for contempt) must be reversed because the passage of time caused Dusing's memory to fade. We do not dispute that memories fade over time. However, even in a criminal case in which a defendant had a constitutional right to a speedy trial, our Supreme Court has held that a fifty-six month delay between arrest and trial was not impermissible, partly because the delay was attributable to the defendant. *Henderson v. Commonwealth*, 563 S.W.3d 651, 667 (Ky. 2018). Here, the delay was significantly shorter than in *Henderson* and is largely, if not entirely, attributable to Dusing's misconduct.

Finally, we reject Dusing's argument that he had "no notice whatsoever that the [F]amily [C]ourt was considering a jail sentence beyond the 7-day sentence that was the subject of the historical contempt findings . . . ." Of

course, we agree that due process requires a party to be given adequate notice. *See, e.g.*, *W.R.G. v. K.C.*, 673 S.W.3d 81, 84 (Ky. App. 2023). However, Bakker's prehearing memorandum of issues and motions plainly listed numerous motions for contempt which she wished Judge Rauf to resolve at the multi-day hearing.

A court has "broad discretion" to devise remedies for civil contempt, including incarceration. *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 335 (Ky. 2011) ("Had the court properly found Ivy in contempt, it could, as a compensatory remedy, have ordered her to make payments toward her arrears in an amount she could afford. The court also could have ordered her imprisonment for past non-compliance."). Therefore, Dusing reasonably knew, or reasonably should have known, that he could be jailed if the trial court found him in contempt.

In sum, we reject Dusing's procedural due process arguments. Under these facts, he was afforded a meaningful opportunity to be heard at a meaningful time in a meaningful manner.

We now briefly address Dusing's fleeting substantive arguments regarding the Family Court's findings and conclusions. Contempt is "the willful disobedience toward . . . orders of a court . . . . Generally, sanctions imposed to benefit an adverse party – coercive sanctions, for example, or compensatory ones – are deemed civil and are sought and imposed through civil proceedings between

-17-

the original parties, very often as part of the underlying cause." *Cabinet for Health and Family v. J.M.G.*, 475 S.W.3d 600, 610-11 (Ky. 2015) (paragraph break, internal quotation marks, and citations omitted). Although it may seem incongruous, incarceration is a possible remedy for civil contempt. *Ivy*, 353 S.W.3d at 335.

Dusing tersely argues he was found in criminal contempt, which "implicate[s] . . . the full panoply of procedural protections applicable to the states under the federal Constitution." *J.M.G.*, 475 S.W.3d at 611. We disagree.

"Punitive sanctions, however – unconditional sanctions not subject to purgation through compliance with an order and imposed principally if not purely to vindicate the authority of the court – are deemed criminal." *Id.* Here, the Family Court afforded Dusing the ability to purge his contempt(s). Moreover, the sanctions were plainly imposed to coerce Dusing to comply with court orders and to compensate Bakker for her costs.

We also discern no error in the court's conclusion that Dusing was in contempt. For civil contempt, Bakker (as the complainant) bore the "burden, at the show-cause hearing, to establish a prima facie contempt. If the complainant meets its burden, the burden then shifts to the alleged contemnor to offer proof in defense or in mitigation." *Id.* at 615. We have outlined the scope of our review of a finding of civil contempt as follows:

> A trial court has inherent power to punish individuals for contempt, and nearly unfettered discretion in issuing contempt citations. We will reverse a finding of contempt only if the trial court abused its discretion in imposing the sentence. Abuse of discretion is defined as conduct by a court that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

*Crowder v. Rearden*, 296 S.W.3d 445, 450 (Ky. App. 2009) (internal quotation marks and citations omitted). We review the trial court's findings of fact underlying its contempt conclusion under the clearly erroneous standard. *Cabinet for Health and Family Services v. R.C.*, 661 S.W.3d 305, 316 (Ky. App. 2023).

Dusing does not meaningfully argue that Bakker failed to satisfy her initial burden. Instead, he argues the Family Court did not provide "meaningful analysis on issues such as the willfulness of Dusing's violation of the court orders . . . ." We agree that "willfulness is a necessary element for any finding of contempt . . . ." *R.C.*, 661 S.W.3d at 316. However, willfulness may be inferred from the evidence. *Id.* at 317 (holding that "[w]hen the evidence is viewed as a whole, the Family Court properly inferred that the Cabinet's violation was willful."). And the determination of whether the contempt was willful is a question of fact. *See* 17 C.J.S. *Contempt* § 149 (2025).

Here, the Family Court found that Dusing's contumacious conduct was willful, and that conclusion is supported by ample evidence. For example, the April 2021 order plainly prohibited Dusing or Bakker from offering opinions or

advice on OFW.  However, there is evidence that Dusing repeatedly included opinions or asides in OFW messages.  In sum, the Family Court did not err by concluding Dusing's violations of the April 2021 order was willful.

Next, Dusing has not cited to binding authority which required the Family Court to engage in additional analysis or to provide additional explanations for its findings and conclusions.  The Family Court made the requisite contempt findings and provided sufficient explanations in its thoughtful decision.

Dusing decries what he perceives to be incorrect statements by the Family Court regarding the procedural history of the case.  We need not examine Dusing's allegations in detail.  The procedural history of this case is sprawling.  Any alleged misstatements about the case's torturous procedural history by the Family Court would be harmless under CR 61.01 because Dusing has not shown that such an error materially impacted the court's substantive contempt finding(s) or CR 11 sanctions.

Dusing also attacks the purge methodology imposed by the Family Court, especially allowing him to purge his contempt by attending counseling sessions with a mental health professional possessing experience treating persons with narcissistic personality disorder.  Dusing accurately cites to provider reports in the record stating that Dusing has narcissistic tendencies but does not have narcissistic personality disorder.  For example, Dr. Bussman found that Dusing had

-20-

"features" of narcissistic personality disorder but did not classify Dusing as actually having that disorder.

The Family Court's decision to premise Dusing's purging his contempt upon receiving treatment for a condition from which he apparently does not suffer appears incongruous at first blush. However, that purgation method employed by Judge Rauf is not actually a bolt from the blue.

In March 2022, the special judge who presided over the case in the interim between the recusal of Judge Mehling and Judge Rauf's appointment held a hearing on Bakker's motion to modify the parenting schedule in light of Dusing's Facebook tirade. In a lengthy post-hearing decision, the special judge recounted Dusing's history of receiving therapy with a provider who the court believed had not addressed Dusing's mental health concerns fully. The order also recounted the testimony of Dr. Ed Connor, who had been an expert retained by Dusing in 2020 (Dusing seemed to contest whether he had actually retained Dr. Connor, but that dispute is immaterial for purposes of these appeals).

The March 2022 order notes that Dr. Connor submitted a report in June 2020 which stated Dusing "showed signs of self-aggrandizement and narcissism" and recommended Dusing receive "intensive individual therapy on a weekly basis" because his current therapy was not effective. Dr. Connor reviewed additional materials prior to the 2022 hearing, at which he testified that Dusing

-21-

"has regressed in his behavior . . . ." The special judge also noted that Dr. Stuart Bussman (also spelled Bassman in the order) recommended Dusing "explore the presence of narcissistic feature[s] with a therapist."

Thus, the special judge's March 2022 order required Dusing to "immediately enroll in therapy with a licensed provider" possessing "experience with treating Narcissistic Personality Disorders and their related behaviors."

There are three main takeaways for purposes of the purgation method Dusing challenges. First, the record is replete with evidence that Dusing has narcissistic tendencies, even if there is apparently not a concrete diagnosis by a provider that he has narcissistic personality disorder. However, Dr. Connor had expressed a belief that Dusing had shown signs of regression in his mental health.

Second, the purge method involving treatment with a provider possessing a history of treating persons with narcissistic personality disorder is not something Judge Rauf created. Instead, that method is essentially a continuation of treatment which the special judge had previously ordered. Indeed, we expressly took note of the mental health counseling requirement in our opinion affirming the March 2022 order on direct appeal, *Dusing v. Bakker*, No. 2021-CA-0539-MR, 2023 WL 4035557, at *20 (Ky. App. Jun. 16, 2023), and in our opinion affirming the denial of Dusing's motion to vacate the March 2022 order. *Dusing v. Bakker*, No. 2023-CA-0381-MR, 2024 WL 387725, at *1-2 (Ky. App. Feb. 2, 2024). In

-22-

other words, we have not previously disturbed the same counseling conditions Dusing now attacks (albeit in a different procedural context). Moreover, by allowing Dusing to purge his contempt by receiving treatment from a provider with experience in treating narcissistic personality disorder, the Family Court actually allowed Dusing to purge his contempt by merely following prior court orders.

Third, though Dusing seems to suggest otherwise, the Family Court has not held that Dusing has narcissistic personality disorder. Instead, recognizing that providers have noted Dusing's narcissistic tendencies, the court has merely required him to obtain treatment from a provider with experience in treating persons with that disorder. In sum, we perceive no error warranting appellate relief in the purgation methods at issue.

Turning to the CR 11 sanctions, "CR 11 . . . is a procedural rule designed to curb abusive conduct in the litigation process." *Lexington Inv. Co. v. Willeroy*, 396 S.W.3d 309, 312-13 (Ky. App. 2013). Because CR 11 "is intended only for exceptional circumstances[,]" a court must assess whether "the attorney's conduct, at the time he or she signed the allegedly offending pleading or motion, was reasonable under the circumstances." *Id.*

We review the imposition of CR 11 sanctions under a "multi-standard approach" whereby we apply "a clearly erroneous standard to the trial court's findings in support of sanctions, a *de novo* review of the legal conclusion that a

-23-

violation occurred, and an abuse of discretion standard on the type and/or amount of sanctions imposed." *Large v. Oberson*, 537 S.W.3d 336, 339 (Ky. App. 2017) (block quote indentation and citation omitted).

Dusing sweepingly attacks the imposition of CR 11 sanctions but does not provide adequate specific details showing why any particular decision by the Family Court cannot stand. We decline to sift through the gargantuan record to minutely scrutinize each submission to the court by Dusing which led to the imposition of CR 11 sanctions.[6] Instead, we will address Dusing's general attacks on the imposition of CR 11 sanctions.

We reject Dusing's untenable argument that Judge Rauf lacked the ability to assess CR 11 violations stemming from matters which predate his becoming the presiding judge. Judge Rauf had the ability to review the record accumulated under the stewardship of his predecessors. Judge Rauf also held a multi-day hearing. The Kenton Family Court is an ongoing entity; it is not merely a specific judicial officer. Judge Rauf had the same duties and powers to resolve matters in this case which Judge Mehling and the special judge previously enjoyed. *Moore*, 561 S.W.2d at 98. Accepting Dusing's argument would require all parties

---

[6] The only specific CR 11 sanction Dusing contests in detail is his assertion that the Family Court could not sanction him for submissions Dusing made to this appellate Court. We disagree, because we specifically held that the Family Court "was in the best position" to determine if Dusing's appellate filings warranted CR 11 sanctions on page seven of our April 23, 2021, order denying Dusing's petition for mandamus in *Dusing v. Mehling*, Case No. 2020-CA-1519-OA.

to simply start over whenever the presiding judge changes and thus would cause any misconduct which occurred prior to the assignment of a new judge to forever remain unaddressed. That conclusion is untenable and is even more outrageous under these facts since Dusing's misconduct is the reason a new presiding judge was necessary. Simply put, Dusing's contention that a new judge cannot resolve matters which arose prior to his or her becoming the presiding judge is wrong.

Dusing has also not shown Judge Rauf erred in finding that CR 11 sanctions were appropriate. The massive record is replete with inappropriate submissions by Dusing. Indeed, both we and our Supreme Court have stated that Dusing's scorched earth litigation posture has exceeded the proper bounds of advocacy. *In re Dusing*, 701 S.W.3d at 404 ("Dusing filed at least seven repetitive motions for Judge Mehling's recusal and an inordinate number of separate appeals. Dusing's litigation tactics exceeded reasonable advocacy and were solely calculated to disrupt the Family Court Proceedings."); *Dusing v. Bakker,* Case No. 2021-CA-0856-MR, November 16, 2021, Order Dismissing Appeal, p. 11 ("Finally, Dusing has expended an inordinate amount of this Court's time and resources with frivolous motions and appeals. We admonish Dusing that the Kentucky Court of Justice does not enjoy the same vast amount of time and resources he apparently possesses . . . . We can discern no legitimate reason to explain how Dusing has chosen to proceed in these appellate cases. We can only

conclude Dusing's purpose is to harass, cause unnecessary delay, or needlessly increase the cost of litigation for Tapke [Dusing's ex-wife] and Bakker."). In sum, Dusing's lackluster arguments are insufficient to show that he is entitled to relief.

We now turn to Case No. 2024-CA-0968-MR, in which Dusing attacks a June 2024 order which again found him to be in contempt for submitting inappropriate OFW messages and not timely reimbursing Bakker. Dusing largely rehashes his previous arguments regarding the Family Court's alleged failure to conclude that his contempt was willful. We reject Dusing's arguments for the same basic reasons previously discussed. The record sufficiently supports a reasonable inference that Dusing's ongoing contumacious conduct was willful.

The Family Court cited to inappropriate messages Dusing posted on OFW. The Family Court was not required to accept Dusing's self-serving contention that the messages were not willful violations of the court's OFW restrictions. The court had the ability to judge credibility and to assess Dusing's claims in light of the entire record, including his lengthy history of noncompliance.

Similarly, the Family Court was not required to accept Dusing's self-serving contention that the challenged OFW messages complied with the court's prior orders. The Family Court had previously ordered that OFW communications "shall be strictly used to convey information about the child or to inquire about the child. No opinions are to be expressed, no advice is to be given and no other

-26-

subjects are to be addressed." We decline to address all of the numerous OFW messages at issue. The Family Court noted some representative examples of OFW messages it believed went beyond the strict limits it had imposed. For example, on April 17, 2024, Dusing posted a message on OFW stating in relevant part that he was glad Child "had a fun party but no substitute for a biological parent of course. Sad for her." Although taken in isolation such comments may seem largely innocuous, the Family Court's conclusion that that message (and the others it discussed) strayed beyond the strict OFW restrictions in the April 2021 order is not erroneous. In sum, Dusing has not shown the Family Court erred by holding that he had violated the April 2021 order's OFW restrictions.

The same conclusion applies to the Family Court's conclusion that Dusing was in contempt for failing to reimburse Bakker for some expenses within thirty days. We reject Dusing's specious argument that he could not be held in contempt because he eventually, belatedly repaid the expenses. The Family Court's prior orders made plain that Dusing had to repay expenses related to Child within thirty days; repayments made outside that thirty-day window thus are facially violative of the Family Court's orders.

It is uncontested that Dusing did not repay some expenses within thirty days. The Family Court had the discretion to accept or reject Dusing's explanation(s) for his tardiness. We reject Dusing's self-serving argument,

-27-

unsupported by citation to relevant supporting authority, that the Family Court had to simply accept Dusing's assertion that his admittedly tardy repayments somehow did not amount to willful violations of the court's crystal clear repayment directives – especially given Dusing's lengthy history of noncompliance with the Family Court's repayment deadline.

We also reject Dusing's argument that the Family Court erred by imposing incarceration as a remedy for Dusing's contempt. At this point in the proceedings, Dusing had been held in contempt numerous times. Thus, we discern no error in the Family Court's conclusion that, under these facts, "[n]o alternative other than incarceration would be sufficient to address the violation of the [prior] Contempt [orders] since monetary consequences, community service, and past sentences of incarceration ha[ve] not resulted in [Dusing's] compliance." Contrary to Dusing's arguments, we conclude the Family Court's explanation is sufficient and amply supported by the record.

We also reject Dusing's argument – again, not buttressed by citation to supportive authority – that the Family Court erred by requiring Dusing to go to jail quickly instead of waiting until it was a more convenient time for him to do so. Failing to obey a court order has consequences. Serial failure to obey court orders warrants serious corrective action. A contemnor does not have the right to dictate when the sanctions for his or her contumacious conduct will be imposed. The

Family Court could have postponed the date Dusing had to report to jail, but Dusing has not shown the court was obligated to do so. Dusing's protestations to the contrary notwithstanding, the Family Court was permitted to order Dusing to be incarcerated for past noncompliance. *Ivy*, 353 S.W.3d at 335 (holding in a civil contempt case that "[t]he court also could have ordered her imprisonment for past non-compliance").

We agree with Dusing that incarceration as a sanction for civil contempt "is extraordinary and subject to certain limitations." *Lewis v. Lewis*, 875 S.W.2d 862, 864 (Ky. 1993). However, we disagree with Dusing that these facts do not warrant imposing that extraordinary sanction. Dusing's lamentable pattern of failing to abide by the court's orders was sufficiently extraordinary and egregious to justify imposing extraordinary remedies. Our conclusion is not changed by the fact that the Family Court ordered Dusing to be incarcerated for a fixed time period. Such a sanction did not automatically transform civil contempt to criminal contempt. *Ivy*, 353 S.W.3d at 335 n.7 ("Although a determinate sentence, such as the thirty-day sentence here, might suggest that the court intended a criminal sanction, that suggestion is belied by the clearly civil nature of the proceedings."); *Lewis*, 875 S.W.2d at 864 ("This Court recognizes the inherent power of the trial court to enforce its judgment by means of incarceration of a person who is found in contempt of the lawful orders of the court.").

Finally, Dusing contends the Family Court failed "to establish a clear purge mechanism . . . . ." The precise details and parameters of Dusing's arguments are unclear. The Family Court's January 2, 2024, order contained clear purgation mechanisms, including Dusing simply obeying the April 2021 order. Since a party is obligated to follow a court order, it is difficult to fathom a more lenient, easy to understand purgation method. Any failure by Dusing to purge his contempt cannot be attributed to the Family Court.

In sum, the Family Court gave Dusing notice and a meaningful opportunity to be heard at a meaningful time. Dusing's due process rights were not violated. The Family Court was not persuaded by Dusing's arguments that he should not be held in contempt. The Family Court made the requisite findings, which are supported by the record. The Family Court did not abuse its discretion or otherwise err in holding Dusing in contempt or fashioning remedies for his contumacious conduct.

For the foregoing reasons, the Kenton Family Court is affirmed in both appeals resolved herein.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEFS FOR APPELLEE: |
|---|---|
| Benjamin Dusing, *pro se* | Stephanie A. Dietz |
| Fort Mitchell, Kentucky | Edgewood, Kentucky |